The next case is Apple v. ITC, 2024-12-85. Mr. Mueller. Yes, Your Honor. May it please the Court, and may I reserve three minutes for rebuttal? Yes. May it please the Court, my name is Joe Mueller, and along with my partner, Tom Sprankling, I represent Apple. Your Honors, this case involves an exclusion order that has deprived millions of Apple Watch users from Apple's blood oxygen feature. The exclusion order is predicated on an underlying decision that suffers from a series of interrelated errors, all of which center on the lack of a proper domestic industry and the lack of valid claims that would cover a pulse oximeter on the wrist of the type that the Apple Watch takes. We're aware of the underlying history and facts. Maybe you can jump in real quickly on the technical prong of the domestic industry question. Absolutely, Your Honor. So with respect to the technical prong, the first thing to note is the definition of the technical prong in terms of what was being proffered as the basis for finding that there was sufficient evidence of patent-practicing products as required by the statute. And the administrative law judge at Joint Appendix page 60 listed the particular prototypes that Massimo and Circuit Court proffered as the basis for satisfying the technical prong. Those were the REV-A sensor, the REV-D sensor, and three versions of the... At that time, there was no question that these were prototypes, right? That's correct, Your Honor. There's no question that those were prototypes as of the date of the complaint, which is the operative temporal timeline. There was no commercial product on the market. The first time Massimo tried to sell a commercial watch that had pulse oximetry in it was the W-1 that long post-dated the complaint, and the administrative law judge set the W-1 aside as a result. The prototypes that go back to your question on the technical prong suffered from further problems. Each one, if looked at with precision and rigor, did not provide sufficient evidence of practicing the asserted patents as of the date of the complaint. And I'll give Your Honor an example. At page 89 of the Joint Appendix, this is where the administrative law judge was discussing whether or not these prototypes were available at the time of the complaint. There's only a few pages in the decision that gets at that critical issue of were the prototypes available at the time of the complaint. In footnote 22, the administrative law judge states, with respect to the blood oxygen functionality itself, which is critical, to satisfying the asserted claims and to demonstrating that these prototypes were practicing products, and I quote, Apple's arguments focus on the physical devices produced in discovery, EPCPX58C, which were loaded with specific software. Just to pause there, those were the prototypes listed at page 60 of the decision and first defining the subject of the technical inquiry. So this footnote says, as to those products, they were loaded with specific software, but the circumstantial evidence regarding testing shows, by a preponderance of the evidence, that prototype devices with designs that are consistent with the asserted domestic industry products were operational before the filing of the complaint. Notably, in that footnote, the administrative law judge did not find that the particular prototypes produced in discovery were operational, but instead alludes to designs consistent with, or other prototypes that were consistent with. Is there a requirement that the prototypes be operational at the time of filing the complaint? Absolutely, Your Honor. The statute requires that there be articles that practice the patents. This Court's precedent requires that the complaint is the relevant touchstone for assessing whether those physical articles exist. Cases like the Broadcom decision that we cited in our papers, as well as the Microsoft decision, have made clear that there needs to be a physical, tangible patent practicing article as of the filing of the complaint. And that's particularly true where the firm of domestic industry on which the Commission relies is an established industry. I don't know that we've ever said that you're limited to either the specific thing you say in the complaint or the specific item you turn over in discovery. And it seems like you're trying to hold the petitioner here either to the drawings in the complaint or to the specific prototypes turned over in discovery. Is that your position, and where have we said that? So, Your Honor, our position is that we need to know the article that Section 337A3 and A2 require. The article needs to be the same for the technical prong under A2 and the economic prong under A3. The antecedent basis for A3 is A2. It's the article. And so there needs to be an article, and we need to know what it is. Now, our position is that it would certainly be best practice to identify that in the complaint, but our appeal does not rise or fall on the complaint. Our appeal on this particular issue turns on whether we knew, as of the conclusion of the record, a particular article, the article that the statute requires that's protected by the patents. I take it then you concede it could be alleged with some degree of generality in the complaint, and over the course of the investigation, the petitioner can produce examples of it, but still not limit themselves to just those examples. That the Commission makes a finding at the end of the close of the record, based on the totality of the evidence, did something that practices the patent exist back at the time of the complaint. Is that a fair recitation of the position? I think the fair recitation, Your Honor, is the nature of the critical analysis on blood oxygen is that footnote on page 89 of the joint appendix, and similar language on pages 88 through 90, where Administrative Law Judge was addressing this issue of were there articles as of the filing of the complaint. But the statute says the industry exists or is in the process of being established. Yes, Your Honor. So in the process of being established, the Commission here expressly disclaimed any adoption of the Administrative Law Judge's findings on in the process of being established under the Beloit decision. This Court is limited to the articulated rationale. Disclaim, it said we're not reaching it. That's right. If we were persuaded by you on some of these issues, shouldn't we remand for the Commission to reach that issue? That's correct. That's absolutely correct, Your Honor. On the in the process of being established issue, there would need to be a remand for consideration by that issue of the Commission in the first instance. Would that be giving you two shots or two bites at the apple? No pun intended. No, Your Honor. Sure. It would not. It would not. And again, there's a couple of keys here. Number one, we don't know as of today the article that was deemed to be patent practicing as of the date of the complaint. There's this hedged language of the type that I recited from the footnote on page 89, but we don't yet know the article. And there would need to be a remand on that as well. There's a second dimension to the domestic industry problem, which also is another reason for at least a remand, and that's the economic prong. With respect to the economic prong, the judge and then the Commission in adopting the Administrative Law Judge's analysis defined the touchstone differently. And if Your Honor's were to go to page 306 of the Joint Appendix, here we have the definition of the economic prong domestic industry. And as I noted earlier, page 60, the domestic industry touchstone was defined as Rev-A, Rev-D, Rev-E, those five prototypes, Rev-A, Rev-D, and three versions of Rev-E. At page 306 in the pages that continue, there the domestic industry for economic prong purposes is defined as the Massimo watch prototypes, not limited to the Rev-A, Rev-D, and Rev-E prototypes. It's a more nebulous and more general characterization of the economic prong touchstone. And that's important. It's important because it lacks the precision and rigor that this Court has required, including the Zircon decision that Judge Lurie and Judge Starkie joined as panel members last year. In that decision, there were a number of products that were offered by Zircon as patent practicing products for both the technical prong and the economic prong. There was a set of patents as to which they applied to the proffered domestic industry articles in different ways. Some of the products practiced certain patents, but not others. So, too, here. If you look at the analysis that begins at Joint Appendix page 306, there was an amalgamation by the Administrative Law Judge of products that purportedly practice the two patents on appeal, the 502 and the 648. Those are PUSA patents, named after one of the named inventors. Those are amalgamated with another patent, the 745 patent, different family, different technology, and found not infringed. Have we ever said, though, that... Have we ever analyzed an iterative process circumstance where it's conceded, I think, that some of the early versions in that process didn't practice the patent, but also established, at least on this record, that some eventually do? Have we ever established or ever addressed which investments count in that circumstance? No, Your Honor, and we're not aware of any case, to be clear, we're not aware of any case in which this Court has adopted a so-called project-based theory of domestic industry, where some research and development work... What authority would you point to that should persuade us that we shouldn't allow an analysis like the Commission did? Zircon, for one. Zircon dealt with commercial products as opposed to prototypes, but there's no logical or policy reason for treating prototypes more charitably. If anything, the contrary. This case involves, as a premise for the decision now on appeal, that there was an industry that had been established by virtue of these prototypes, and we would respectfully submit that the Zircon approach of rigor and precision in assessing the significance of economic expenditures applies with even greater force when we're at the nascent research and development stage as opposed to the commercial product stage. It's a little different, somewhat related, but the Commission, at page 32, and they cite... It runs over to 33, and they talk a little bit about information I think is still confidential, but they say there's this undisputed finding of sort of an alternative way that the economic problem could be satisfied. It has to do generally with how much of mass mode investment was here in the U.S. Address why that's not an adequate ground. So there, to your honor, we would need to isolate to the particular patent practicing products that are relevant to the PUSA patents before we can address that theory. And to give an example that's non-confidential, it's an extreme example, but for illustration purposes, if we reduced and isolated the economic expenditures to those that actually pertained to the PUSA patents and the amount was $10, it wouldn't matter if the entirety of that amount was spent in the U.S. That would not meet the statutory requirement of significance under subprong one and two of subsection A3, or the substantial expenditure prong of the research and development prong under subsection A3. I'll note, the research and development prong was not relied on by the commission in this case, purely the labor and expenditure prong, but to assess whether the amount would be significant in the language of the statute, we first need to isolate to the patent side issue. Zircon requires that we do that. The decision didn't. I'll also note, the administrative law judge had a separate section of her domestic industry analysis for the 127 patent. That was found ultimately to be not infringed, but that's an example of how the analysis could and should have been done for the PUSA patents, to focus on a patent by patent basis, exactly as Zircon requires, and the Zircon logic, again, applies with even greater force in the context of a nascent research and development stage, when it's most challenging to characterize that nascent stage as a quote, industry, the rigor and precision is just as important, if not more, there. So would every prototype represent a different industry? Is that your argument? Each of the asserted patent families should be assessed separately with respect to the domestic industry requirement and the technical prong as well, but there needs to be first identification of the touchstone for the technical prong, the touchstone for the economic prong. Those should match, which they did not match here. If you compare page 60 of the joint appendix to page 306, there was no symmetry, as between the economic prong and the technical prong, that was a threshold failing, and then even once those were applied, once applied, there was no isolation of the patent practicing products for the relevant patents here. What should have happened is, we should have first taken the prototypes, the REVE, REV-D, REV-E, made a finding as to whether those prototypes met the technical prong, step one. Step two on the economic prong, there should have been an assessment of the significance of the economic expenditures for those particular products. What happened instead was that hedged finding on the technical prong, and then on the economic prong, a different touchstone was used, the Massimo Watch Project, which is a more generalized nebulous characterization, and that prevented the isolation and the rigor that Zircon requires. Now, even beyond the domestic industry, we see that same lack of precision and consistency and rigor on issues like enablement, and I'll give you an example there. There, for enablement of the prior art, there, the key reference that we relied on was a patent that was originally assigned to a company called Lumidigm. The priority date was years before the PUSA patent family. The Administrative Law Judge found that Lumidigm, in combination with some other references, invalidated the relevant claims of the 501 patent, which was actually the third member of this PUSA patent family that was originally part of the case. That finding of obviousness was adopted by the Commission and was not appealed to your honors here. But having found that Lumidigm, in combination with other references, invalidated on the ground of obviousness, the 501 patent, the Administrative Law Judge and then the Commission, in adopting this portion of the Administrative Law Judge's decision, found lacking the degree to which Lumidigm enabled blood oxygen at the wrist, and found it particularly challenging to do blood oxygen at the wrist and required a more detailed disclosure of blood oxygen at the wrist. Lumidigm... You've just about used all of your rebuttal time. We'll give you three minutes for rebuttal and we'll give extra time to Kelly. Mr. Trodd, you are first. You're taking eight minutes. Good morning. May it please the Court. I would like to start with technical prongs, if that's okay with the Court. Okay, so... Could you speak up a little bit? Yes, sorry. The first point I would like to make is that the domestic industry products for the technical prong that the Commission relied on were not just the admitted exhibits. It wasn't just exhibit 52, 58, so on and so forth. My friend from Apple points to page 60 of the ALJ's decision where the ALJ recognizes that complainants rely on the Red A sensor. It gives a citation of an exhibit for each of them, but then it cites Massimo's post-hearing brief and the argument that was presented to the Commission. In there, for each of the admitted exhibits, Massimo explained that these exhibits are introduced as representative or exemplary of the domestic industry products. And that is how Massimo presented its evidence throughout its case, and that is consistent with the Commission's findings as well. It seems to me that your friend on the other side was arguing that you're limited by the language that was used in the complaint, or that you're limited by the physical sample that you provided. What's your response to that? We disagree on both points. The purpose of the complaint is to allege a violation of Section 337 so that an investigation could be instituted. The Commission's findings for a determination are consistent with the APA. They would be on the record after a notice of an opportunity to be heard, and the decision needs to be based on the whole record. It's not on the allegation of the complaint. Under my friend's view, it seems like there would be no need for a hearing at all. We would just assess violations based on the complaint as well. And also, we have a statutory duty to consider all of the evidence presented by the parties. We're not limited to just certain subsets. We give the parties an opportunity to be heard. We evaluate the evidence and determine whether or not they met their burden. We're not narrowed to just specific exhibits that are omitted for representative purposes. And we're not limited to just the CAD drawings that were omitted for each of the exhibits as well. What about the argument that there needs to be symmetry between what the patent practicing articles are at the technical prong and they need to be identical at the economic prong? Do you agree with that, and was that done here? That was done here. So I don't know if I agree with that exactly. So for the economic prong analysis, the inquiry is focused on it's centered on the article that practices the patent, but it's not limited to just that. It includes investments that are with respect to or relating to the patent practicing patents. So what I'm hearing is you dispute that it has to be identical. That is, if the way we review what the commission did is it only looked to the certain prototypes at the technical prong, but then it widened its analysis for the economic prong to include non-practicing iterations. If that's how we see what the commission did, you say that's okay. So it's an iterative design process where the Rev, A, D, and E are just future versions of the circle and wings. It's one product. But it looks to me like the commission considered, for instance, the circle and the wings at the economic prong analysis, but did not consider them at the technical prong. And so there's this mismatch between what they found as adequate for the technical and what they found adequate for the economic. And so if Apple's right that our law requires a symmetry or an identicality, then I think you have a problem. So help me with your position on that. All of the investments that the commission considered were investments that were related to or with respect to the A, D, and E. From the circle and wings, those were features from those devices were incorporated into the A, D, and E sensors. There's an iterative design where they've led to these later versions. They incorporated features from those previous versions. It was all one design project. And as you're beginning... The circle and the wings, you don't argue that they practiced the patents, right? Right. So why is it fair to consider that? The consideration of the investments that you consider for the economic prong stage, it's broader than what you can consider. Take, for example, this patent in Motorola. There, the investments were, alleged by the complainant, were only investments in software. But the completed article for the technical prong was a mobile device that had that software on it. And this court considered and rejected a very similar argument in that case. The argument was that you can't consider the investments in the software because the software doesn't practice the patent. But the court did consider it. And the reason why it considered it is because that software was important to and related to the article that practices the patent. And what about in the gray brief at 15 and 16? I'm sure you recall this. It's kind of vivid. Apple talked about what about the Model T. Under your logic, an investment in, they say, 1909 in the Model T could still be cited now because, you know, something to do with that research is no doubt impacting automobiles today. Is that the reality of your logic? No, not at all. The commission decision, I think, shows that that's not true here. So we require a clear connection between the research, between the laborer that's credited and the investments in the directed to the patent practicing articles. In this very investigation, Massimo alleged a lot of investments, even in very recent designs of wrist-worn pulse oximeters, and the commission rejected that because there wasn't a clear relationship to the articles protected by the patent. So I can't comment on any argument that Ford would make in the future, but I think it's highly unlikely that, given the commission's practice, that century-old automobiles... So you have to show a nexus between... Exactly like the statute says. It says, with respect to or relating to. The court has viewed that inquiry as pertaining to, directed to... And is that nexus also alleged in the complaint? The nexus alleged in the complaint, yes. I believe it is. Should it be? They have to allege a violation. Not a violation, a nexus. That would be alleging the domestic industry element of... They would have to allege a domestic industry and that nexus would be within the required allegations for a domestic industry. There's a lot of argument about Chenery in the reply brief. They're accusing you and Massimo of bringing up a whole bunch of arguments in your briefing that the commission didn't reach and therefore we cannot reach them. Do you have a response to that? There are a lot. Can you point me to a specific one? Do you have a general response? You can't affirm on the ground that the commission didn't reach. Do you agree with that? Are you talking about... For example, Chenery precludes the court from affirming on the ground of waiver where the commission didn't... Waiver. I disagree with that. We don't need to make a waiver finding for arguments that are obviously waived. You wouldn't be affirming us on waiver. That's not a ground supporting the commission. You'd be affirming us on the grounds that the... on the commission's decision below and those arguments would just be forfeited. Thank you, counsel. Mr. Wray. Mr. Wray, we'll give you the extra time. Take three minutes if you need it. Thank you, Your Honor. Mr. Wray for Massimo and Circuit Court, the intervenors in this case. Many of the questions that you've asked today are answered by the statute and I thought we should start with the statute. For example, there's not symmetry between the technical prong and the economic prong. The economic prong is broader because of the language that counsel raised in the statute with respect to or relating to. Whereas the article, the article must meet the limitations of the claim. There is no question in my mind in this case, and I will show you, that Apple is really trying to rewrite the law. They are trying to change the law. And the easiest way to show that is if you go to the great brief, page seven, they conclude with this following quote. And again, section 337 requires a finished article in quotes, not finished in quotes, article, not a nascent development project. There is their argument in a nutshell. They are trying to read in an adjective to the word article. That argument was rejected by the commission before the trial even started. They filed a motion for sanctions, terminating sanctions, that our complaint was inadequate. And the commission noted our argument that the statute does not require a finished product. They alleged that we were defrauding the commission by putting forth prototypes. Counselor, are you familiar with our case of Suprema? I certainly am. And what's its application to this particular argument you're making now? That you need a physical, physical article. We have physical articles. In some of the other cases, you might be talking about things that aren't physical, like in ClearCorrect was another case where the court said digital data was not physical. But we have physical articles. They don't need to be a finished product. And this commission at 14136 in this order denying the motion for terminating sanctions, specifically cited cases telling Apple that recognizing that a commercial production of a domestic industry article is not required. This court in Phillips later said you don't need FDA clearance for an article. The commission's decision say the word article is capacious. There's no adjective, no limiting attribute to article. At the time of those orders, though, I think you were arguing for both established domestic industry and domestic industry in the process of being established. And as the case comes to us, we can only reach, unless you disagree, help me, but we can only reach the established industry prong. We can't affirm on the grounds of an industry's being established. Correct. So aren't those broad statements possibly going just to the prong that's not really before us? No. This is very, very clear that we were relying on an iterative design project. A single product, which culminated in the W1, which received FDA clearance after the final initial determination. So no, this discussion is clearly discussing our reliance on the technical prong and not in the process of being established, which the ALJ found, but the commission didn't feel. Take a position. Do we have any iterative design process cases or is this an issue of first impression for us? I cannot find an iterative design process case exactly like ours, but that's why I'm relying on the statute because article is such a broad, broad term. It applies to any physical thing and that's exactly what the commission has held. And if you look at footnote 4 on 14-136, the commission cites some cases to that effect. And Philip Morris came out two weeks later, which said you don't even need FDA clearance for products that can't be sold. So I think it's clear from their brief, they're trying to read something into article that is just simply not there. They also say this drawing, this whole argument on the CAD drawing, the CAD drawing, they occupy a lot in their brief on that, and they say we have no answer. According to their gray brief, we have no answer for the fact that if we had a photo, why didn't we include it? Well, we did include a photo and it's in the same order I just referred to. And it's 14-130 in that same order denying is a photograph which we needed a photograph to show the straps because the straps aren't shown by the CAD drawings. And this was in the complaint attached as an exhibit relied on by the commission and Apple has not sought review of these findings made before the trial. So we have a very comprehensive pre-trial order. This was April 28th. The trial wasn't until June and Apple has not sought review on any of these findings, including the finding that it is undisputed. Undisputed. There is no dispute that multiple Massimo watch physical items existed at the time of the amended complaint. And that's at 14-138 found by the commission. Not sought review. So I can understand these CAD arguments about the drawings. Is Zircon a problem for you? No. Zircon deals with different product lines covered by different patents. And you can't aggregate. We agree with that. But there's no dispute in this case You can't aggregate the patents or the costs? You can aggregate the patents if they cover common subject matter, which is the case here. If you look at the claims, they all read on the devices. As Mr. Trout explained, Rev. A, D, and E satisfy all the claims of the 648. Revs D and E satisfy Claim 28 of the 502. So we don't have a situation of the Model T and the Ford Bronco. We have one reiterative design project leading to one product and the judge was so careful she excluded work we did prior to the W-1 project, which led to the W-1 project. So she took a very conservative approach. But Zircon and Wings, they don't practice their patents, but yet investments related to them I think were counted. Correctly so. That is correct. Why is that correct? Because there's no symmetry. We're back to the statute. Mr. Trout correctly quoted the statute. The statute with regard to the economic prompt says industry existing relating to or with respect to those products or articles. Articles is the word, not products. Articles. And Motorola in this court's case law, in fact, in Motorola, I believe Mr. Trout referred to that as well, Motorola dealt with a component and the Federal Circuit of this court said components can be part of the industry even though the patent claim doesn't read on it. Why won't we have watered down the domestic industry so much that we render it the economic prompt toothless as Apple contends?  If we adopt your view, they say we would render the economic prompt toothless. Well, first of all, in the facts of this case, that clearly doesn't apply because Apple isn't even challenging the significance of the quantity of our expenditures. They're not even alleging that our quantity isn't enough or not significant. So in this case, we clearly showed the industry with respect to the articles, actually had an article, many revisions of the article, they all exist at the time, and the findings by the commission repeatedly are that they are representative, and your question about A, D, and E, the physical item, the reason why the commission was careful in saying with respect to the design A or with respect to design D, that's because there's more than one. If you look at the 70490 of the joint appendix, Massimo explains the quantities that they made of each revision. So to say you need to show that that particular one operated is borderlines silly. There were many. There was a dozen of each, at least a dozen of each revision, and that's explained at 70490. An exhibit that Apple introduced at the trial, which was our interrogatory responses, explaining the design and the history and the software and the firmware in each of the physical items. What about prosecution latches? These patents were first filed in 08. Seems like there was a continuation filed every two years until what, 2019? Why isn't prosecution latches relevant? Well, first of all, that issue has been waived. They did not raise it with any specificity to the commission. So the commission didn't even touch prosecution latches and later on the denial of stay specifically found that they had waived that argument. I thought the ALJ rejected the defense and the commission adopted that. Yes, but then when they raised it on the motion to stay, the commission then said you didn't even preserve that for review. So whether they adopted it or not on the merits, the adoption piece, the ALJ correctly found with no dispute that there was no delay in the prosecution. There was nothing unfair. Everything was done publicly. The initial application published in 2018 and that this patent produced, this application produced many patents and there was no support for Apple's allegation that these filings somehow had something to do with the Apple Watch. And to show the silliness of that argument, they did not introduce pulse oximetry to the best they could until COVID in 2020 and they tried to act like these filings had something to do with their Series 0, Series 1, Series 2, Series 3. Those didn't even have pulse oximetry in them. So there's no factual support for any of the allegations and this is why the judge rejected outright all of the prosecution latches defenses. Thank you, Mr. Wray. Thank you, Your Honor. Mr. Muell, we'll give you four minutes. Thank you, Your Honor. So let me start with this question of the mismatch between the technical prong and the economic prong and the lack of symmetry. Mr. Wray said that the statute permits that lack of symmetry, which is evident in the administrative law judge's decision that that lack of symmetry was part of her analysis and the commission adopted it, which was error. The statute itself answers the question and if we go to 1337 A3, I'm reading from the statute, for purposes of paragraph 2, paragraph 2 describes the technical prong and precedes this, an industry in the United States shall be considered to exist if there, I'm sorry, paragraph 2 describes the intellectual property violations. This goes on to say an industry in the United States shall be considered to exist if there is in the United States with respect to, with respect to the articles protected by the patent, and it goes on to list copyright and trademark, A, significant investment in plant and equipment, B, significant employment of labor or capital, or C, substantial investment in its exploitation, and it continues. The only prong that the commission relied on was B, substantial or significant employment of labor or capital. That needs to be with respect to, quoting the words of the statute, with respect to the articles protected by the patent. So the statute answers the question for this. There needs to be symmetry between the technical prong and the economic prong. The subject of the technical prong inquiry needs to be identical to the subject of the economic prong inquiry. That's exactly consistent with the rigor and precision that this Court required in the Zircon case, and it's exactly consistent with the language of the statute. Here it's lacking, which is forcing Massimo to retreat to the argument the statute permits the asymmetry. It does not. And retreat to the argument that this Court, your precedent, allows for this project based theory that was used for the economic prong, not for the technical prong, but for the economic prong. And again, as Mr. Wray acknowledged, and I agree with him, there's no case that supports that theory. There's no case that says a project based form of domestic industry, this more nebulous, generalized research and development project would be sufficient. It would be particularly insufficient in a case in which, in the process of, I'm sorry. Isn't that what we said in Motorola? So in Motorola, your Honor, there, the issue was components in the form of certain operating system software and some other components used in the patent practicing products. But there's just a lack of symmetry there. No, not so, your Honor. As far as I can know, there's no lack of symmetry there. The complaint was that the expenditures were being devoted to components, and there the idea was that the components were used in the products. So if here the expenditures had been for things used in Rev. A, Rev. D, Rev. E, we'd have a different case. To your question, Judge Stark. On your reasoning, components could never be the basis for an investment that would qualify, because there can't be symmetry between non-practicing components and a larger practicing product. Not so, your Honor. The way it would work, we would suggest is the technical plan would assess what practices, and then there could be an assessment as to the economic expenditures that are with respect to those products. And I'll give you an example. If there was a manufacturing line set up That means there's no symmetry. You're not requiring symmetry. If you're saying the investment, let's just posit a world in which the investment only goes to one tiny component of a larger patent practicing product, okay? Yes, your Honor. So the larger patent practicing product is relied on at the technical prong, but at the economic prong, we're only relying on investments going to the component. You say that's allowed. Yes, your Honor. But then you admit symmetry is not required. That's not symmetry. I respectfully ask, your Honor. If they're both, the starting point would be the patent practicing product. And the question would be for the economic expenditures, what's with respect to? Circle and Wings were offered up for practicing the 745 patent, which is not part of the same family. It's the Zircon issue all over again, just at the prototype stage. The last thing I'll say, your Honor, Joint Appendix 27241, the Commission acknowledged that it was undisputed as of December of 2023, and I quote, Massimo was not selling its W1 watch in the United States in any meaningful quantity and does not intend to widely market that product in the United States. Why does that matter to your question, Judge Stark? To take this proposed regime of a project-based form of domestic industry would water that requirement down to nothing. It's inconsistent with the statute and at a minimum, there should be a remand for the symmetrical application of the technical prong and the domestic prong and the assessment of whether using the same article that the statute requires, there were sufficient economic expenditures and a sufficient showing at the technical prong and that they matched. That's what the statute requires and that's what good policy would dictate as well, your Honor. You're almost out of time, but I wanted you to be sure to address the prosecution laches issue. Yes, your Honor. So on prosecution history laches, there's a couple points I'd make briefly. Number one, the original priority application was in 2008. There was a series of continuation applications filed over a three-year period. Starting in 2010, there was no continuation application filed for a five-year period. There was some prosecution activity on the older applications, but no new continuation applications for five years, which is a strong indication that the natural organic growth of the portfolio was coming to a close at least with respect to filing new continuations. Wasn't your argument waived? No, your Honor, for a couple reasons. Number one, this was fully addressed by the administrative law judge. Number two, the commission did address this squarely in their own decision. Number three, the only statement of waiver was not made in the final determination, which is the only decision before this court at this point. You originally addressed it in the state motion, and you in other issues tell us we can't look at what the commission said at the state motion. That's right. In the state decision, in the decision denying our request for a stay at the exclusion order, for the very first time the commission said that the Lachey's argument was waived. They did not say that in their review of the administrative law judge's final determination. They addressed it, but they didn't resolve it, all right? I'm sorry, Your Honor? They addressed it, but they didn't reach a resolution on it. They adopted the ALJ's finding that there was no prosecution, Lachey's, and this is analogous to the Department of Homeland Security case that we cited in our briefs, where the rescission order with respect to the DACA immigration regime. The rescission order was followed by a later memorandum providing further explication of the reasons for the rescission order, and the Supreme Court held the later memorandum needed to be ignored. So to hear the later justification on Lachey's, where the commission is saying after its final determination that there was a waiver, but did not say so in the four corners of the decision on appeal. Thank you, counsel. I think we have both arguments. The case is submitted, and you can quote for our decision. Thank you very much, Your Honors.